BRIAN SANDOVAL, ATTORNEY GENERAL OF THE STATE OF NEVADA, APPELLANT, v. THE BOARD OF REGENTS OF THE UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA AND CAMPUS ENVIRONMENT COMMITTEE, RESPONDENTS.

No. 38877

May 2, 2003                                         67 P.3d 902

---

*Brian Sandoval,* Attorney General, and *Tina M. Leiss,* Senior Deputy Attorney General, Carson City, for Appellant.

*Brooke A. Nielsen,* Assistant General Counsel, University and Community College System of Nevada, Reno, for Respondents.

Before the Court EN BANC.

## OPINION

*Per Curiam:*

This appeal arises from a district court's order granting summary judgment in favor of respondents, the Board of Regents of the University and Community College System of Nevada (Board) and Campus Environment Committee (Committee). Appellant Attorney General filed a complaint against respondents, alleging that they violated Nevada's Open Meeting Law by discussing topics not listed on the agendas for public meetings held September 7-8, 2000.

In granting summary judgment in favor of respondents, the district court acknowledged that Nevada's Open Meeting Law requires that agendas for public meetings include a "clear and complete" statement of topics to be discussed, but concluded that any discussion that is "germane" to an agenda topic does not violate the Open Meeting Law. Applying the "germane" standard, the district court concluded that respondents did not violate the Open Meeting Law.

We conclude that the district court applied an erroneous legal standard in granting summary judgment because Nevada's Open Meeting Law clearly includes stringent agenda requirements, which are not satisfied by applying the "germane standard." Because the discussion at the public meetings exceeded the scope of the "clear

and complete'' statement of the topics listed on the agendas, we reverse the district court's order granting summary judgment in favor of respondents. And we conclude that, as a matter of law, the Attorney General is entitled to summary judgment. However, we remand the case to the district court to determine whether injunctive relief is warranted.

## FACTS

On December 20, 2000, the Attorney General filed a complaint against respondents for alleged violations of Nevada's Open Meeting Law, namely NRS 241.020, which states that agendas for public meetings must include a ''clear and complete'' statement of agenda topics. The complaint sought a declaration that respondents discussed topics that were not on the agenda for the Committee and Board meetings held on September 7-8, 2000, and sought injunctive relief to ensure that respondents abide by the Open Meeting Law in the future.

### Committee meeting

The Committee held a meeting on September 7, 2000. The agenda included an informational topic, ''Review of UCCSN Policies on Reporting,'' described as:

> Review UCCSN, state and federal statutes, regulations, case law, and policies that govern the release of materials, documents, and reports to the public.

Before discussing the topic, Regent Tom Kirkpatrick explained that this was an informational item only, and that the Committee had to ''be very careful in discussing this item and taking action'' because of certain state and federal laws. Tom Ray, general counsel, then gave an overview of federal and state laws related to the release of documents to the public.

Following Mr. Ray's presentation, Regent Douglas Hill proceeded to discuss a controversial report, prepared by the Nevada Division of Investigation (NDI), regarding a dormitory raid that occurred on the University of Nevada, Las Vegas (UNLV) campus. Regent Hill discussed details of the dormitory raid, criticized the UNLV police department's actions, and recommended that the UNLV police department be disarmed. Regent David Phillips then commented on the danger of drugs on the UNLV campus.

Throughout the discussion, Mr. Ray warned the Committee to cease discussing this issue. He warned the regents that the discussion might implicate personnel issues and violate the Open Meeting Law because the topic was not on the agenda. He also recommended that the Committee put the item on the agenda for a future meeting. After Mr. Ray's third warning, Regent Kirkpatrick terminated the discussion.

*Board meeting*

On September 7-8, 2000, the Board held a regular meeting. The agenda included a section titled "Committee Reports," under which read: "Please refer to the specific committee agendas for complete reference materials and/or reports." The "Campus Environment Committee" was listed as a topic under the "Committee Reports" section and was described as follows:

> Chairman Tom Kirkpatrick will present a report on the Campus Environment committee meeting held September 7, 2000 and requests Board action on the following recommendations of the committee:
>
> - Round Table Discussion of Actions and Schedule of Topics to be Discussed with Campus Representatives— The committee reviewed previous actions and unfinished business of the committee and compiled a schedule of topics for the remainder of this year.

At the Board meeting, Regent Kirkpatrick reported that the Committee discussed issues to be addressed for the remainder of the year. He also conveyed what Mr. Ray explained to the Committee regarding the laws that govern the release of documents to the public. Regent Kirkpatrick then informed the Board that a request was made for an additional report regarding the investigation into the UNLV dormitory raid incident, which would address the actions of the UNLV police while not disclosing names of the officers involved. He also informed the Board that a request was made to examine the possibility of disarming the UNLV police department.

Following a motion to approve the Committee's recommendations and to accept Regent Kirkpatrick's report, Regent Mark Alden asked whether UNLV President Dr. Carol Harter could request NDI to bifurcate the report about the UNLV dormitory raid, making it a general summary of the incident that could be released to the public. Mr. Ray responded that NDI might be able to redact confidential information from the report, but recommended that the UNLV administration or general counsel's office should do so instead. Chancellor Jane Nichols agreed to work with NDI in an attempt to redact the report. The Board agreed, however, that obtaining a new NDI report should be included in the prior motion, and thus, the Board did not take official action to obtain a redacted report.

*Proceedings in district court*

Prior to trial, respondents filed a motion for summary judgment. In granting respondents summary judgment, the district court observed that Nevada's Open Meeting Law did not specifically define

the scope of permissible discussion about an agenda topic. And thus, the district court relied on out-of-state authority in concluding that any discussion that is "germane" to an agenda topic does not violate Nevada's Open Meeting Law. The district court determined that the discussion at the Committee and Board meetings was "germane" to the agenda topics, as it generally related to the release of information to the public. The district court further determined that Mr. Ray's warnings were motivated by personnel concerns, and because no individuals were identified, the district court concluded that no personnel rights were violated and no violations of the Open Meeting Law occurred.

## DISCUSSION

On appeal, we review orders granting summary judgment de novo.[1] Under some circumstances, we must determine whether the law has been correctly perceived and applied by the district court.[2] After viewing all evidence and taking every reasonable inference in the light most favorable to the nonmoving party, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[3]

Here, the parties do not argue that a genuine issue of material fact exists. Instead, the parties dispute what is required under NRS 241.020(2)(c)(1) in terms of notifying the public about what will be discussed at a public meeting. Essentially, the parties dispute whether the district court properly applied the "germane standard" or whether Nevada's Open Meeting Law requires a more stringent standard.

The construction of a statute is a question of law that we review de novo.[4] To do so, we must first look at the plain language of the statute.[5] But if the statutory language is ambiguous or does not address the issue before us, we must discern the Legislature's intent and construe the statute according to that which "reason and public policy would indicate the legislature intended."[6]

[1]*Lumbermen's Underwriting v. RCR Plumbing*, 114 Nev. 1231, 1234, 969 P.2d 301, 303 (1998).

[2]*Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000).

[3]*Posadas v. City of Reno*, 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993).

[4]*See Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513 (2000).

[5]*See id.* at 1168, 14 P.3d at 514.

[6]*State, Dep't Mtr. Vehicles v. Vezeris*, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986) (internal quotations and citations omitted), *quoted in Salas*, 116 Nev. at 1168, 14 P.3d at 514.

NRS 241.020(2)(c)(1) requires that a public body provide an agenda consisting of a "clear and complete statement of the topics scheduled to be considered during the meeting." NRS 241.010 explains that the Legislature enacted the Open Meeting Law to ensure that all public bodies deliberate and take action openly because "all public bodies exist to aid in the conduct of the people's business." Indeed, the legislative history of NRS 241.020(2)(c)(1) illustrates that the Legislature enacted the statute because "incomplete and poorly written agendas deprive citizens of their right to take part in government" and interfere with the "press' ability to report the actions of government."[7]

The Legislature evidently enacted NRS 241.020(2)(c)(1) to ensure that the public is on notice regarding what will be discussed at public meetings. By not requiring strict compliance with agenda requirements, the "clear and complete" standard would be rendered meaningless because the discussion at a public meeting could easily exceed the scope of a stated agenda topic, thereby circumventing the notice requirement. Accordingly, we reject the "germane standard," as it is more lenient than the Legislature intended. Instead, we conclude that the plain language of NRS 241.020(2)(c)(1) requires that discussion at a public meeting cannot exceed the scope of a clearly and completely stated agenda topic.

We must now apply this standard to the case at hand. The Attorney General argues that a comparison between the agenda topics and what was actually discussed at the Committee and Board meetings shows that respondents violated the Open Meeting Law because the agendas did not provide the public with adequate notice that the NDI report, UNLV police, or drugs on the UNLV campus would be discussed.

In *Salazar v. Gallardo*,[8] the Texas Court of Appeals noted that Texas' Open Meeting Law requires "full and adequate notice" of the topics scheduled so that the public is fairly alerted as to what will be considered at a public meeting. Following this standard, the court concluded that the Open Meeting Law was violated when the school district board's agenda stated that the board would discuss the superintendent's performance, job duties, evaluation, and contract, but the discussion at the meeting resulted in an award of $500,000 of severance pay for the superintendent.[9] In another case, the Texas Court of Appeals observed that a "higher degree

[7]Hearing on S.B. 140 Before the Assembly Governmental Affairs Comm., 65th Leg. (Nev., May 10, 1989).

[8]57 S.W.3d 629, 633-34 (Tex. App. 2001).

[9]*Id.*

of specificity is needed when the subject to be debated is of special or significant interest to the public.''[10]

Like Texas, the purpose of Nebraska's agenda requirements is to give the public notice of what will be discussed at a public meeting so that any interested persons can attend.[11] Indeed, in *Hansmeyer v. Nebraska Public Power District,*[12] the Nebraska Court of Appeals observed, ''The public meeting laws are to be broadly interpreted and liberally construed to obtain the objective of openness in favor of the public.'' In *Hansmeyer,* the court concluded that the agenda topic, ''Work Order Reports,'' was not sufficiently descriptive to give notice that a $47 million, three-year construction project would be discussed and approved at the meeting.[13] Given the magnitude of the project and the public's inability to participate in the decision-making process as a result of the inadequate notice, the court concluded that a substantial violation of the Open Meeting Law occurred.[14]

Similarly, Nevada's Open Meeting Law seeks to give the public clear notice of the topics to be discussed at public meetings so that the public can attend a meeting when an issue of interest will be discussed. In this instance, the NDI report was a matter of substantial public interest, yet the agendas for the Committee and Board meetings did not state that the report would be discussed.

The discussion at the Committee meeting greatly exceeded the scope of the ''clear and complete'' agenda topic relating to review of law and policies governing the release of materials, documents, and reports to the public. Although discussion of the NDI report in the abstract may not have violated the Open Meeting Law, the Committee went too far when it discussed details of the report, criticized the UNLV police department, and commented on the impact of drug use on the UNLV campus. Accordingly, we conclude that, as a matter of law, the Committee violated the Open Meeting Law.

Whether the Board violated the Open Meeting Law is a closer question. Although the agenda clearly and completely stated that,

---

[10]*Gardner v. Herring,* 21 S.W.3d 767, 773 (Tex. App. 2000).

[11]*Hansmeyer v. Nebraska Public Power Dist.,* 578 N.W.2d 476, 480 (Neb. Ct. App. 1998), *aff'd,* 588 N.W.2d 589 (Neb. 1999).

[12]*Id.* at 481.

[13]*Id.*

[14]*Id.*

among other things, the Committee would inform the Board about unfinished business and a schedule of topics for the remaining year, we conclude that this was too broad to alert the public of the possibility that Committee recommendations, such as obtaining a redacted NDI report and proposing an examination of disarming the UNLV police, would be discussed.[15] Because the Board's agenda did not properly apprise the public that it would engage in a discussion that would lead to informal action to obtain a redacted NDI report, we conclude that, as a matter of law, the Board violated the Open Meeting Law.

Finally, respondents argue that strict compliance with the "clear and complete" standard impinges on the regents' First Amendment rights and places too arduous a burden on public bodies. The impact of the Open Meeting Law on the First Amendment rights of public officials was addressed in *Hays County Water Planning Partnership v. Hays County*.[16] In that case, the Texas Court of Appeals concluded that the problem with the county commissioner's remarks was "not that he could not make them at all, but rather the location and timing of his comments," as they exceeded the scope of the agenda topic.[17] The court observed, "[W]e see no restriction of the right of free speech by the necessity of a public official's compliance with the Open Meetings Act when the official seeks to exercise that right at a meeting of the public body of which he is a member."[18]

We agree with the Texas Court of Appeals that requiring the regents to comply with Nevada's Open Meeting Law does not infringe on their First Amendment rights. The regents are free to speak on any topic of their choosing, provided they place the topic on the agenda, thereby satisfying the "clear and complete" standard found in NRS 241.020(2)(c)(1). Furthermore, we do not regard this requirement as too burdensome.

Accordingly, we reverse the district court's order granting respondents summary judgment, and remand this case to the district

---

[15]*See Hays Cty. Water Plan. Part. v. Hays County,* 41 S.W.3d 174, 180 (Tex. App. 2001) (observing that the notices that the supreme court held to be sufficiently descriptive "alerted readers to the particular issue the governing bodies would address—changes in electric power rates, the enlargement of the Dallas-Forth Worth Turnpike, and condemnation of land located in a specific area of Bexar County," but that the supreme court concluded that more general notices, such as "personnel," "litigation," and "real estate matters," were too broad to give adequate notice).

[16]41 S.W.3d 174.

[17]*Id.* at 182.

[18]*Id.* at 181-82.

court with instructions to enter summary judgment in favor of the Attorney General and to determine whether injunctive relief is appropriate.