JEFFERY HALL, Appellant, *v.* ENTERPRISE LEASING COMPANY—WEST, a Nevada Corporation, Respondent.

No. 42493

July 13, 2006                                          137 P.3d 1104

*Cobeaga Tomlinson, LLP*, and *Charles A. Michalek, Assly Sayyar*, and *D. Neal Tomlinson*, Las Vegas, for Appellant.

---

*Cohen, Johnson, Day, Jones & Royal* and *Steven L. Day* and *Justin L. Wilson*, Las Vegas, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

In this appeal, we consider whether statutory liability coverage provided by the short-term lessor of a motor vehicle is implicated when a plaintiff accepts a formal offer of judgment in the amount of other primary liability coverage available to the short-term

lessee. We also consider when a short-term lessee of an automobile may validly waive coverage provided by the short-term lessor.

## FACTS

Mr. Goc Ono, a short-term lessee customer of respondent Enterprise Leasing Company, negligently injured appellant Jeffery Hall while driving a rental vehicle. Ono carried personal insurance with individual third-party liability limits of $100,000 per person injured in a single accident. Enterprise provided statutorily mandated minimum coverage for short-term lessees under NRS 482.295 and NRS 482.305; this minimum coverage provided limits of $15,000 per person injured and $30,000 total for two or more persons injured in a single accident. Initially, Hall sued Enterprise and Ono. At some point, Hall dismissed the action against Enterprise without prejudice.[1] He eventually accepted an offer of judgment served upon him through insurance defense counsel retained by Ono's personal automobile liability insurer—in the amount of the limits of Ono's personal coverage for single persons injured in a single accident. Claiming that the value of his injuries exceeded $100,000, Hall filed another suit against Enterprise for the additional $15,000 minimum coverage. The district court dismissed the second case for failure to bring the second suit within the applicable statute of limitations. Hall appeals.

Having concluded that the district court erred in resolving the matter on statute of limitations grounds,[2] we asked the parties to brief the question of whether Hall's acceptance of Ono's offer barred the second action because it extinguished Ono's legal liability to Hall, thus ending any obligation Enterprise had to pay Hall third-party benefits on Ono's behalf. We answer this question in the affirmative.

## DISCUSSION

### Statutory insurance coverage

The claim of dual coverage by Hall in part implicates the scope of Nevada's minimum automobile liability insurance laws and presents a particular problem concerning the interplay between

---

[1]The dismissal ostensibly occurred after Hall could not establish a negligent entrustment claim against Enterprise or, under NRS 482.305(4), after Enterprise provided proof of statutory minimum insurance. *See infra* discussion of statutory coverage issues.

[2]The accident in this case took place on November 2, 1998. Hall brought the second suit against Enterprise on June 30, 2003. The district court dismissed the action under NRS 11.190(4)(e), requiring that tort actions be commenced within two years. Because we conclude that Hall could not sustain the action against Enterprise, the limitation period does not apply.

NRCP 68, our offer of judgment rule, and the requirements of NRS 482.305, relating to short-term automobile rentals. The claim also raises the need to clarify two of our previous decisions construing these measures: *Salas v. Allstate Rent-A-Car, Inc.*[3] and *Alamo Rent-A-Car v. State Farm.*[4]

### Dual coverage under the Nevada short-term rental statutes

NRS 482.295 requires that short-term lessors provide minimum third-party liability coverage for the operation of rental vehicles as a condition to DMV registration. NRS 482.305 enumerates the consequences of failure to provide minimum coverage, subjecting the short-term lessor to joint and several liability with the short-term lessee for any damages caused by the short-term lessee's negligent operation of the vehicle:

> 1.   The short-term lessor of a motor vehicle who permits the short-term lessee to operate the vehicle upon the highways, and who has not complied with NRS 482.295 insuring or otherwise covering the short-term lessee against liability arising out of his negligence in the operation of the rented vehicle in limits of not less than $15,000 for any one person injured or killed and $30,000 for any number more than one, injured or killed in any one accident . . . is jointly and severally liable with the short-term lessee for any damages caused by the negligence of the latter in operating the vehicle . . . .
> 2.   The policy of insurance, surety bond or deposit of cash or securities inures to the benefit of any person operating the vehicle by or with the permission of the short-term lessee in the same manner, under the same conditions and to the same extent as to the short-term lessee.
>
> . . . .
>
> 4.   When any suit or action is brought against the short-term lessor *under this section*, the judge before whom the case is pending shall hold a preliminary hearing in the absence of the jury to determine whether the short-term lessor has provided insurance or a surety bond or deposit of cash or securities covering the short-term lessee as required by subsection 1. Whenever it appears that the short-term lessor *has provided* insurance or a surety bond or deposit of cash or securities covering the short-term lessee in the required amount, the judge shall dismiss as to the short-term lessor the action brought under this section.

[3]116 Nev. 1165, 14 P.3d 511 (2000).

[4]114 Nev. 154, 953 P.2d 1074 (1998).

(Emphases added.) *Salas* mandates dual or ''stacked'' coverage when the short-term lessee is insured under a personal automobile liability policy, when the short-term lessor has provided statutory coverage, and when the damages sustained by the claimant against the lessee exceed the lessee's personal insurance limits. Our conclusion in *Salas* was based upon our interpretation of NRS 482.305, as providing coverage under both the lessee's and the lessor's policies:

> NRS 485.185 requires that every owner of a motor vehicle provide insurance in the minimum amounts set forth therein. Also, in lieu of the ''owner's policy'' required by NRS 485.185, the driver may provide an ''operator's policy,'' which essentially insures the driver while operating any motor vehicle, in the same minimum amounts. *See* NRS 485.186. *Observing the foregoing in light of NRS 482.305(1), we infer that, in instances where the lessee of an automobile under a short-term lease agreement is covered by an owner's or operator's policy, the legislature was aware that more than one insurance policy would cover the automobile lessee— the driver's personal policy pursuant to NRS 485.185 or NRS 485.186 and the lessor's policy provided pursuant to NRS 482.305(1).* We therefore conclude that, by enacting a scheme that contemplates dual coverage [where applicable], the legislature intended that both policies provide coverage up to the respective statutory minimums.[5]

Under *Alamo*, the short-term lessee's personal policy provides primary coverage up to the statutory minimums, and the coverage provided by the short-term lessor is deemed to be ''secondary,'' *i.e.*, excess coverage.[6] Accordingly, we stated in *Alamo* that, absent a personal policy covering the driver, the lessor ''will step in and compensate the victim up to the minimum limits.''[7]

It has been suggested in this matter that *Salas* was wrongly decided and that the existence of minimum insurance provided by

---

[5]*Salas*, 116 Nev. at 1169, 14 P.3d at 514 (emphasis added).

[6]114 Nev. at 160, 953 P.2d at 1077. ''In *Alamo*, we held that in cases where the lessee's own insurance policy and the policy provided by the lessor both contain mutually repugnant 'other insurance' clauses, the driver's personal insurance is the primary insurer up to the statutory minimums.'' *Salas*, 116 Nev. at 1169, 14 P.3d at 514. *Alamo* leaves unanswered the question as to whether the lessee's policy coverage in excess of the statutory limits must be prorated with a short-term renter's insurance under the so-called *Lamb-Weston* doctrine, which provides a formulaic basis for resolving repugnant ''other insurance'' clauses. *See Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 341 P.2d 110 (Or. 1959), *cited in Alamo*, 114 Nev. at 158, 953 P.2d at 1076.

[7]114 Nev. at 160, 953 P.2d at 1077.

the lessee should absolve the lessor of any liability or obligation to pay under the coverage it has obtained in compliance with NRS 482.305. This view is grounded in the public policy considerations behind NRS 482.305: that short-term lessors must simply ensure that minimum coverage from some source is in place to comply with the statute. We reject that proposition.[8]

NRS 482.295 requires short-term lessors to provide evidence of minimum coverage on rental vehicles as a condition of DMV registration. In turn, NRS 482.305 requires that the independent minimum coverage provided under NRS 482.295 must also cover short-term lessees in order for the lessor to avoid joint and several liability to the injured third-party claimant for damages caused by the lessee. Thus, NRS 482.305 implicitly requires that the short-term lessor independently provide minimum "insurance" or "coverage" to indemnify the short-term lessee for his or her liabilities to third parties injured by the short-term lessee's negligence. Under *Salas*, these coverages stand as independent sources of public protection against the use of short-term rental vehicles.[9] *Salas'* conclusion is underscored by the language in NRS 482.305(4) that mandates dismissal of actions against the short-term lessor when the lessor, not the lessee, provides proof that it "has provided" the required coverage (insurance, deposit or bond). Nothing in NRS 482.305 requires the lessor to ensure that the lessee has his or her own insurance. Nothing in that provision necessarily excuses or releases the lessor's coverage when the lessee has sufficient coverage of his own; and nothing in the statute releases the short-term lessor's joint liability for failure to provide short-term rental insurance when the lessee is separately insured. In short, absent a legitimate waiver by the lessee, the statutory coverage remains in place—coverage for the lessee's liability to other drivers— regardless of the existence of separate coverage at the time of the rental transaction.[10]

---

[8]While this argument supports the ability of the short-term lessee to waive the short-term liability coverage under the circumstances described *infra*, it does not support the per se exoneration of the short-term coverage, as is also discussed *infra*.

[9]*See* discussion of legislative intent quoted above from *Salas*.

[10]It is a normal practice for the short-term lessor to charge a premium for providing the mandatory liability coverage to the customer. Notwithstanding the dual coverage doctrine of *Salas*, and assuming that the customer is personally insured with minimum limits, it is also normal practice for rental customers to waive the coverage in exchange for a waiver of the premium. However, in the event that the customer has no insurance, the waiver is void and the statutory insurance applies.

Accordingly, subject to the qualifications discussed below, we reaffirm the basic holding in *Salas* that the existence of insurance provided by the lessee does not automatically exonerate the coverage provided by the lessor. Our reaffirmation of *Salas*, however, does not compel the conclusion in this case that Hall may make a claim against the Enterprise coverage. Based upon the following lines of analysis, we conclude that the district court correctly dismissed the second action against Enterprise.

*Liability issues relating to Enterprise as a party to the second lawsuit*

The second action against Enterprise is problematic as a matter of substantive insurance and tort doctrine. Absent an independent ground for liability, *i.e.*, agency liability, negligent entrustment, or some statutorily created liability, a Nevada motor vehicle owner is not per se vicariously liable in tort for the negligence of a permissive user. Thus, absent agency or negligent entrustment, Enterprise's liability must arise from some statutory imperative, such as NRS 482.305(1), imposing joint and several liability in the event the lessor fails to provide the required minimum coverage. However, as noted, the lessor's provision of insurance or other posting of security for the lessee's potential liability immunizes the lessor from liability stemming from any accident involving the

---

Interestingly, the customer in *Salas* expressly waived "supplemental coverage." Although the *Salas* opinion did not explicitly deal with the validity of such waivers at the time of the rental transaction, the recitation of the waiver in the opinion would lead the reader to conclude that the standard waivers in short-term rental arrangements run afoul of the holding mandating dual coverage. As noted, *Salas* expressly relies on a perceived legislative awareness that two or more coverages might apply to a single loss. This notwithstanding, basic public policy dictates that the personally insured customer may, if minimally insured under the Nevada minimum insurance requirements, waive the coverage in exchange for not paying the premium for the short-term liability insurance. Waivers under such circumstances are in harmony with the public protection consideration mandating minimum coverage for the operation of all vehicles upon Nevada public roads, including short-term rentals. Thus, to the extent that *Salas* seemingly superimposes dual coverage that is not necessarily mandated, we clarify that the customer should be able to waive the statutory short-term coverage if he or she provides minimum coverage from other sources. Such waivers do not affect the lessor's immunity from joint and several liability under NRS 482.305.

Although Ono apparently waived the statutory coverage, the parties have not litigated the effect of this waiver. Thus, we are unable to discern from the record the full circumstances of the waiver. Assuming a valid waiver under these circumstances, the Enterprise coverage would not have been implicated.

short-term lessee. This being the case, assuming the short-term lessee has not waived the coverage, a relationship akin to that of an insurer/insured arises as between the lessee and the lessor's insurer or the lessor acting as an insurer.[11] Accordingly, the lessor's obligation to pay is conditioned solely upon the *legal liability* of the lessee to a third party for damages. Thus, Enterprise as a self-insured entity is only obligated to pay benefits if the customer is liable; it is not itself directly liable in tort to persons injured by rental customers.

*Further clarification of Salas*

*Salas* closes with the following observations:

Instead, we conclude that the legislature enacted a statutory scheme providing dual coverage in instances such as this. Sound public policy dictates *that a short-term lessor of motor vehicles may be required to compensate the victim*, at least up to the statutory minimum, in cases where the lessee's personal insurance does not fully compensate the victim(s). Therefore, in this instance, where the lessee's personal insurance policy has first been extinguished pursuant to *Alamo, [the short-term lessor] may still be required to compensate the victims up to an additional $30,000.00*, the statutory minimum for one accident pursuant to NRS 482.305(1), depending on the damages proved.[12]

---

[11]See the discussion in *Alamo* as to why the rules applicable to insurers do not entirely apply to short-term rental agencies providing liability coverage to customers. 114 Nev. 154, 157, 953 P.2d 1074, 1076 (1998). For example, the *Alamo* decision notes that, under *Hartz v. Mitchell*, 107 Nev. 893, 822 P.2d 667 (1991), qualified self-insured short-term lessors must be distinguished from insurance companies for some purposes, including the obligation to provide uninsured motorist protection. And, for the purpose of imposing primary coverage on the personal insurer and a secondary position to the short-term lessee's self-insured position, *Alamo* states:

We conclude it is better policy to make an insurance company the primary insurer over a rental agency which is not in the business of underwriting insurance for individual drivers. The nature of a car rental agency's business—renting cars to strangers for short periods of time— is not conducive to a finding that it is in the insurance business; unlike a full-time insurance company, Alamo does not review renters' driving histories, nor (in the absence of the renter's purchase of extra protection) does Alamo collect a premium from its "insureds." The rental agency does not have the ability to raise a single negligent driver's premiums to cover its losses, but would be forced to raise rental rates across the board for all future renters.

114 Nev. at 160, 953 P.2d at 1077. As we conclude, however, for the purpose of entertaining claims of persons injured by the negligence of short-term automobile lessees, the lessor stands in the shoes of a third-party liability insurer.

[12]116 Nev. at 1170, 14 P.3d at 514-15 (emphases added) (footnote omitted).

The quoted language speaks of the lessor's "requirement to compensate" third-party victims. In this, we did not mean to engraft independent tort liability upon the lessor for the lessee's negligence. This requirement only speaks to the lessor's obligation to provide indemnification for the underlying tort liability of the lessee. We now clarify that the unwaived separate coverage provided by the lessor remains in place based upon the liability of the lessee to the injured third party and only to the extent of damages proved. Again, while *Salas* loosely states the short-term lessor's "requirement to compensate" a third party injured by the negligence of the short-term lessee, *Salas* only speaks of the duty to provide the coverage, not the lessor's liability in tort. The obligation of the short-term lessor in such situations is to place the coverage; its liability only obtains when it fails to "provide" the separate short-term rental insurance or security. In short, Nevada is not a "direct action" state, but rather, allows actions by third-party tort claimants against third-party liability coverage providers only after a judgment against the tortfeasor has been obtained.

### *Effect of the offer of judgment*

During the initial litigation concerning the accident, Ono, the short-term lessee, served an offer of judgment upon Hall in the amount of his individual policy limits, $100,000. Hall accepted the offer. Acceptance of the offer by Hall extinguished Ono's legal liability. Because the legal liability of the short-term lessee was a condition precedent to the right to collect under either of the two policies, acceptance of the offer bars any recovery against any coverage Enterprise provided for Ono's potential liability to third parties such as Hall.

Accordingly, the district court properly dismissed the second case, not because the limitation period had run, but because Ono's liability had been entirely resolved. This, in turn, immunized Enterprise from having to pay Hall additional moneys as an excess insurer under *Alamo*.[13]

### CONCLUSION

We conclude that Hall lacks any standing to sue Enterprise. First, Enterprise itself was not subject to suit. Second, acceptance of the offer of judgment ended Hall's ability to further recover against Ono and, thus, against the Enterprise coverage. Accordingly, we affirm the district court in this instance.

ROSE, C. J., BECKER, GIBBONS, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[13]The imprecise language in *Salas* implying an independent duty of the lessor may have misled Hall's counsel in the prosecution of the action below.